CITY OF CLEVELAND, Appellee,

v.

SWIECICKI, Appellant.

[Cite as *Cleveland v. Swiecicki,* 149 Ohio App.3d 77, 2002-Ohio-4027.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80681.

Decided Aug. 8, 2002.

Stephanie L. Jerlstrom, Assistant City Prosecutor, for appellee.

John J. Spellacy and Albert A. Giuliani, for appellant.

TERRENCE O'DONNELL, Judge.

{¶ 1} Jeffrey Swiecicki appeals from a judgment of the Cleveland Municipal Court finding him guilty of disorderly conduct and resisting arrest in connection with his heckling of Russell Branyan, a Cleveland Indians baseball player, during a game at Jacobs Field. On appeal, Swiecicki claims that the city failed to produce sufficient evidence to support his convictions. We agree and therefore vacate the court's judgment and discharge him.

{¶ 2} On September 25, 2001, Swiecicki and several friends attended the Indians game, sat in the left field bleachers at Jacobs Field, and heckled Indians' left fielder Russell Branyan throughout the game. During the seventh inning, Swiecicki yelled: "Russell Branyan, you suck. You have a big ass." This caught the attention of Jose Delgado, a Cleveland policeman who at the time worked as a security officer for the Cleveland Indians. Delgado motioned for Swiecicki to stop, but Swiecicki instead began to argue with Delgado. Delgado then approached Swiecicki's row and asked Swiecicki to come to him. When Swiecicki refused, Delgado went into the row and ordered Swiecicki to get up and go with him. When Swiecicki again refused, Delgado said, "Well, we can do this the easy way or the hard way."

{¶ 3} At that point, Swiecicki stood up and Delgado grabbed him in the "escort" position, that is, by one arm with both hands on the arm, and took him down the steps of the bleachers section. As they approached the tunnel to leave the bleachers section, Swiecicki began to argue again. Then as he jerked his arm out of Delgado's grip and pushed his arm away, Delgado said, "Now you are

under arrest," turned him around, and placed him against the wall. Swiecicki's brother, Scott, then approached them. While Delgado motioned Scott to stop, Swiecicki broke from Delgado's grasp and turned around to face Delgado. As a result, Delgado, while telling Swiecicki to get down and to stop resisting, executed an "arm bar" by grabbing Swiecicki's arm, twisting it and locking it in a bond and finally brought him to the ground. He then handcuffed him and called on his radio for backup support; the officers who arrived to assist Delgado took Swiecicki to a holding room in the basement of Jacobs Field and later escorted him to jail.

{¶ 4} Subsequently, Delgado signed two separate complaints charging Swiecicki with aggravated disorderly conduct in violation of Section 605.03 of the Cleveland Codified Ordinances ("C.C.O.") and resisting arrest in violation of C.C.O. 615.08. Swiecicki entered pleas of not guilty, and the court scheduled the matter for trial.

{¶ 5} At the bench trial, Delgado testified that he observed Swiecicki carrying beers back to his seat several times during the game and saw him holding a beer in his hand when he yelled at Branyan. Wilfred Labrie, who worked as an usher, also testified for the city, stating that he heard some "foul and abusive" language.

{¶ 6} Swiecicki testified in his own behalf, admitting that he heckled Branyan throughout the game. Five of his friends who attended the game testified that his comments during the game did not annoy them.

{¶ 7} The court, after hearing the evidence, found Swiecicki not guilty of aggravated disorderly conduct but guilty of disorderly conduct and resisting arrest. The court sentenced him to a fine of $50 for disorderly conduct and a fine of $251 and one day in jail for resisting arrest.

{¶ 8} Swiecicki now appeals, presenting five assignments of error for our review. As our resolution of his first and third assignments of error determines the outcome of this appeal, we address them first. They state, respectively:

{¶ 9} "I. The evidence presented was not sufficient as a matter of law for finding defendant guilty of disorderly conduct in violation of Cleveland Ord. Section 605.03(B)."

{¶ 10} "III. The trial court erred in overruling defendant/appellant's motion for acquittal when a 'lawful arrest' is a requisite element of the charge of resisting arrest and where the arrest was unlawful as a matter of law."

{¶ 11} Swiecicki maintains that the evidence presented by the city does not support his convictions of disorderly conduct and resisting arrest.

{¶ 12}  In *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717, the court summarized the standard of review for an insufficiency claim:

{¶ 13}  "[T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.  The claim of insufficient evidence invokes an inquiry about due process.  It raises a question of law, the resolution of which does not allow the court to weigh the evidence."

{¶ 14}  Regarding the charge of disorderly conduct, the Codified Ordinances of the city of Cleveland provide:

{¶ 15}  "605.03 Disorderly Conduct;  Intoxication

{¶ 16}  "* * *

{¶ 17}  "(b) No person, while voluntarily intoxicated shall do either of the following:

{¶ 18}  "(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance or alarm to persons of ordinary sensibilities, which conduct the offender, if he were not intoxicated, should know is likely to have such effect on others;

{¶ 19}  "* * *

{¶ 20}  "(e) Whoever violates this section is guilty of disorderly conduct, a minor misdemeanor.  If the offender persists in disorderly conduct after reasonable warning or request to desist, disorderly conduct is a misdemeanor of the first degree."

{¶ 21}  At trial, the city assumed the burden to prove that Swiecicki was intoxicated, that he engaged in conduct likely to be offensive or cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, and that, if not intoxicated, he should have known that such conduct was likely to have had that effect on others.

{¶ 22}  The only evidence the city produced to establish intoxication consisted of Delgado's testimony that he observed Swiecicki carrying beers several times back to his seat and holding a beer while yelling at Branyan.  The city did not present breath-alcohol or blood-alcohol evidence to establish intoxication, nor did it offer expert testimony.  The evidence that Swiecicki carried or held beers, and even the inference that he had been drinking beer, is insufficient to establish intoxication.

{¶ 23}   Moreover, the city offered no evidence to establish that Swiecicki engaged in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities.   The charge here arose solely from Swiecicki's heckling of Branyan and yelling, "Russell Branyan, you suck.   You have a big ass."

{¶ 24}   Passionate baseball fans are emotionally involved in every play and customarily manifest their approval or disappointment with words or gestures. In Jacobs Field, the fans are in fact invited to yell and cheer via scoreboard prompting and even with the famous drumbeat of John Adams.   Appropriate conduct in this type of setting differs from what may be appropriate in a church, library, or orchestra hall.   While persons of ordinary sensibilities might be offended, inconvenienced, annoyed, or alarmed by similar conduct in those other settings, the words uttered by Swiecicki to voice his displeasure at Branyan's lack of speed in a baseball game can hardly be perceived as offensive to ordinary sensibilities rising to the level of criminal disorderly conduct;   some in attendance may even have shared his sentiments.   Accord *Spokane v. McDonough* (1971), 79 Wash.2d 351, 356, 485 P.2d 449 (a person of ordinary understanding can readily perceive the difference between conduct that will be deemed noisy, riotous, abusive, and disorderly in one context and conduct that is acceptable in others).

{¶ 25}   Likewise, the city failed to present evidence to establish that, if Swiecicki were not intoxicated, he should have known that his conduct was likely to offend or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities.

{¶ 26}   Thus, the city's evidence is insufficient as a matter of law to support Swiecicki's conviction of disorderly conduct.

{¶ 27}   Regarding the charge of resisting arrest, C.C.O. 615.08 provides:

{¶ 28}   "No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."

{¶ 29}   We recognize that in order to uphold a conviction for resisting arrest, it is not necessary for the prosecution to prove guilt of the underlying offense.   See *State v. Sansalone* (1991), 71 Ohio App.3d 284, 285, 593 N.E.2d 390. However, the prosecution must prove that the defendant interfered with a lawful arrest.   An arrest is "lawful" if the surrounding circumstances would give a reasonable police officer cause to believe that an offense has been or is being committed.   Id. at 285, 593 N.E.2d 390, citing *Parma Hts. v. Kaplan* (Mar. 30, 1989), Cuyahoga App. No. 55108, 1989 WL 30584.

{¶ 30}   Swiecicki's heckling in these circumstances did not provide a reasonable police officer basis to believe that it constituted a criminal offense.

Moreover, the transcript reveals that when asked on cross-examination what caused him to place Swiecicki under arrest, Delgado stated, "I was just going to escort him out until he jerked away from my hold and pushed my arm away. That's when I said he was under arrest." Thus, Officer Delgado, according to his own testimony, arrested Swiecicki because of his conduct committed while being escorted out of the stadium, not because of his belief that Swiecicki had committed the crime of disorderly conduct.

{¶ 31} Applying the sufficiency standard, we therefore conclude that the evidence here is insufficient to support a conviction of resisting arrest.

{¶ 32} Our resolution of these two assignments of error renders the remaining assignments of error moot, and we need not address them. See App.R. 12(A)(1)(c).

{¶ 33} On the basis of the foregoing, the judgment of the court is vacated, and Swiecicki is discharged.

Judgment vacated
and appellant discharged.

PATRICIA ANN BLACKMON, P.J., and DIANE KARPINSKI, J., concur.